USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/1/22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
        -against-                   :
                                    :
DIONYSIUS FIUMANO,                  :
                                    :
                    Defendant.      :
------------------------------------X

No. 14 Cr. 518 (JFK)
No. 19 Civ. 11906 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR DEFENDANT DIONYSIUS FIUMANO:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Edward A. Imperatore
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant-Petitioner Dionysius Fiumano's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 196.)[1] The Government opposes Fiumano's motion. (ECF No. 199.) For the reasons set forth below, Fiumano's motion is DENIED.

**I. Background**

Unless otherwise noted, the following is taken from the parties' submissions, Fiumano's Presentence Investigation Report ("PSR"), (ECF No. 118), the trial transcript ("Tr."), (ECF Nos. 102—12.), and the transcript of Fiumano's sentencing, (ECF No. 137). In ruling on Fiumano's request, the Court has considered

---

[1] Unless otherwise noted, all docket entry citations in this Opinion and Order refer to the criminal docket, No. 14 Cr. 518 (JFK).

1

the arguments advanced in his <u>pro se</u> motion, (ECF No. 196), his

Memorandum of Law and Amended Memorandum of Law,[2] (Docket No. 19

Civ. 11906, ECF No. 11), the Government's opposition, (ECF No.

202), Fiumano's Reply, (ECF No. 217), and an affidavit submitted

by Fiumano's trial counsel, Dean Steward, (ECF No. 225).

On May 3, 2016, Fiumano was convicted by a jury of wire

fraud, in violation of 18 U.S.C. § 1343, and conspiracy to

commit wire fraud, in violation of 18 U.S.C. § 1349. (PSR ¶¶ 2–

5.) The charges stemmed from Fiumano's central role in a

massive mortgage modification fraud scheme that stole millions

of dollars from thousands of financially vulnerable homeowners.

(<u>Id.</u> ¶¶ 2–3, 25–35.) During the trial, the Government

demonstrated that Fiumano and dozens of telemarketers under his

supervision used targeted phone calls and emails to con

individuals into paying thousands of dollars for mortgage

modification services that did not exist. (<u>Id.</u>) The

Government's evidence consisted of, among other things: (1) the

testimony of victims, who described the false representations

---

[2] Fiumano filed an 84-page Memorandum of Law in Support of the instant
petition on February 18, 2020. (Docket No. 19 Civ. 11906, ECF No. 6.)
That same day, Fiumano filed a separate motion seeking the Court's
leave to file an additional oversized brief of 47 pages. On February
24, 2020, the Court issued an Order permitting Fiumano to file an
amended memorandum of law of no more than 30 pages by no later than
April 1, 2020. Fiumano did not submit his amended memorandum until
June 25, 2020. (Docket No. 19 Civ. 11906, ECF No. 11.) Although
untimely, the supplemental filing largely reiterates the arguments
contained in Fiumano's original motion and, as a result, the Court is
willing to consider its contents in resolving Fiumano's petition.

that were made to them concerning the purported mortgage modification services; (2) the testimony of three cooperating witnesses—Ped Abghari, Justin Romano, and Mahyar Mohases—who testified to Fiumano's participation in the scheme; and (3) documentary evidence, including emails, documents recovered from Fiumano's office and computer, and bank records, which detailed the losses suffered by the victims and the money pocketed by Fiumano and his co-conspirators.

The evidence demonstrated that Fiumano's fraudulent activity began in 2009 when he was hired by Pedram Abghari to work as a sales representative for a company called Clear Blue. (Tr. at 111.)  At Clear Blue, Fiumano and other telemarketers called individuals over the phone and solicited them to purchase Clear Blue's non-existent mortgage modification services.  (Id. at 97-113).  Using a script created by Clear Blue, Fiumano and other telemarketers would tell potential customers that if they paid Clear Blue roughly $3,000, an attorney and a skilled professional known as an "underwriter" would negotiate with the customer's lenders and secure a more favorable mortgage on their behalf.  (Id.)  Clear Blue did not, however, use customer payments to hire attorneys and the client paperwork Clear Blue submitted to lenders consisted of basic forms that the customers could have completed themselves.  (Id. at 166.)

In 2011, Fiumano left Clear Blue to join Vortex Financial,

3

a new venture started by Abghari and other former Clear Blue employees.  (Id. at 111.)  Vortex Financial was known to consumers by several names, including, Professional Marketing Group, Attorney Alliance Union, and Professional Legal Network (collectively, "PMG").  (Id. at 100, 335.)  As relevant here, the fraud scheme at PMG operated in a similar manner as the fraud scheme at Clear Blue.  (Id. at 114.)  A lawyer named Rory M. Alarcon and his purported "law firm," the Alarcon Law Group, agreed with PMG to lend Alarcon's license to PMG's operation and pretend to be the attorney working on customer mortgage modification files.  (Id. at 335.)  Alarcon, however, never reviewed PMG customer files and did not negotiate with lenders on behalf of PMG customers.  (Id.)

Fiumano joined PMG as a vice president and brought several Clear Blue employees, all of whom were trained in the fraud scheme, with him to the new company.  (Id. at 115–16.)  By February 2012, Fiumano was the general manager of the entire sales department and in charge of a team of over 60 telemarketers and seven managers.  (Id. at 120, 568.)  As general manager, Fiumano was responsible for hiring and firing managers and salespeople, training members of the sales team, and writing and distributing the call scripts that were used to lure in new victims over the phone.  (Id. at 134—50.)  The various scripts were filled with misrepresentations that were

4

designed to convince victims that PMG could prequalify them for
a mortgage modification and that an attorney would secure the
modification for them by working with their lender. (Id. at 140–
41, 626–27.)  When customer complaints concerning the fraud
invariably appeared online, Fiumano and his co-conspirators
would change the company's name, web domain, phone number, and
email address.  (Id. at 224.)  Fiumano referred to this process
as a "company flip." (Id.)

In 2014, Fiumano and his co-conspirators were finally
arrested.  (Id. at 242-43.)  In total, they had obtained
approximately $31 million from more than 30,000 victims, at
least 61 of whom lost their homes.  (PSR ¶¶ 47–57.)  Fiumano
received approximately $593,000 in the form of commissions, the
most of any member of the conspiracy.  (Tr. at 250, 702.)
During his trial, Fiumano did not call any witnesses or offer
any evidence in his defense.

Fiumano's sentencing occurred on September 15, 2016,
during which the Court read excerpts from two of the more than
100 victim impact statements it received "so that anyone who
reads this record has some idea of why I say this was a callous
scheme and really a heartless one."  (Sent. Tr. at 29:22–30:1.)
The Court found a statutory maximum of 20 years' imprisonment on
each count, with a Guidelines total maximum sentence of 40
years.  (Id. at 31:5-7.)  Nevertheless, the Court varied

downward, sentencing Fiumano to two concurrent 16-year terms of incarceration.  (Id. at 33:14-21.)  The Court ordered restitution in the amount of $11,975,404.  (Id. at 34:23-25.) Fiumano appealed his sentence on various grounds, however, he did not challenge his conviction or the conduct of the trial. The Second Circuit denied Fiumano's appeal and affirmed his conviction and sentence by summary order.  See United States v. Fiumano, 721 F. App'x 45 (2d Cir. 2018).

On December 26, 2019, Fiumano, proceeding pro se, filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 196.)  In the motion, Fiumano raises two separate grounds for relief.  First, he argues that he was denied effective assistance of trial counsel, in violation of the Sixth Amendment.  (Id.)  Second, he contends that the phrase "scheme to defraud" in the wire fraud statute, 18 U.S.C. §§ 1343, 1349, is unconstitutionally vague as applied to his conduct in violation of his Fifth Amendment right to due process.  (Id.)  On May 8, 2020, the Government filed a Memorandum of Law in Opposition to Fiumano's motion.  (ECF No. 199.)  In its Memorandum, the Government argues that Fiumano's motion should be denied because he has failed to establish that his trial counsel provided constitutionally ineffective representation and the term "scheme to defraud" is not unconstitutionally vague.  (Id.)  On October 20, 2020, Fiumano

6

filed a Reply to the Government's letter.  (ECF No. 217.)  Due to the nature of Fiumano's claims, the Court ordered that his trial counsel, Dean Steward ("Steward"), submit an affidavit in response to Fiumano's petition.  (ECF No. 223.)  The Court received the affidavit on January 27, 2022.  (ECF No. 225.)

## II.  Applicable Law

Under 28 U.S.C. § 2255(a), a federal prisoner may collaterally challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States."  To obtain relief under § 2255, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Under § 2255(b), the district court is required to hold an evidentiary proceeding "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  The Second Circuit, in turn, has interpreted this provision to require a hearing where the petitioner pleads a "'plausible' claim of ineffective assistance of counsel."  Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi v. United

States, 586 F.3d 209, 213 (2d Cir. 2009)). "It is within the district court's discretion to determine the scope and nature of a [§ 2255(b)] hearing. . . . Thus, when the judge who tried the underlying proceeding[] also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." Id. (citation omitted.) "'Bald allegations' unsupported by evidentiary facts do not" warrant a hearing. Puglisi, 586 F.3d at 213 (quoting Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977)).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 669 (1984). Under the first prong of the Strickland test, "the proper standard for attorney performance is that of reasonably effective assistance." Id. at 687. In applying this standard, the "court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre,

912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).  The burden is on the petitioner to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Strickland, 466 U.S. at 687).

Under the second prong of the Strickland test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 693-94.  In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  Accordingly, "the prejudice component of the Strickland test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Finally, the Court notes that pro se litigants, such as Fiumano, "are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75,

9

79 (2d Cir. 1996)).

## III.  Discussion

### A.  Ineffective Assistance of Counsel

Fiumano raises four separate arguments in support of his claim that his trial counsel's representation was constitutionally ineffective.  First, Fiumano argues that Steward failed to adequately investigate the Government's case against him.  Second, Fiumano contends that Steward was "ineffective for failing to object" to the Court's allegedly erroneous jury instructions on the conspiracy charge.  (ECF No. 196.)  Third, Fiumano alleges that Steward "fail[ed] to adequately prepare and file a Rule 29 [motion] and object to [the] prosecutor's closing Clear Blue arguments."  (Id.)  Finally, Fiumano argues that Steward prevented him from testifying in his own defense.  The Court addresses each of these claims in turn.[3]

### 1.  Failure to Investigate

_____

[3] In his Amended Memorandum of Law in support of his petition, Fiumano also argues that Steward was ineffective because he "refused to call several witnesses" who would have "rebut[ed] the Government's claims." (Docket No. 19 Civ. 11906, ECF No. 11.)  Steward notes in his affidavit that the individuals identified by Fiumano were participants in the charged mortgage fraud scheme.  (ECF No. 225.)  Unsurprisingly, the Court finds that Steward's decision not to call these individuals as witnesses was a reasonable one.  See Moskowitz v. United States, No. 01 Civ. 10644 (MBM), 2002 WL 31119269, at *4 (S.D.N.Y. Sept. 24, 2002) (noting that petitioner's "suggestion that [co-conspirator's] testimony could have helped his defense [was] simply fanciful"); see also United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) ("[a] failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel").

Fiumano's principal argument in support of his habeas petition is that Steward failed to conduct three separate investigations related to the Government's case.  Specifically, Fiumano contends that Steward failed to adequately investigate (1) the Clear Blue fraud scheme, (2) what Fiumano characterizes as a "regulatory scheme" promulgated by the Federal Trade Commission ("FTC"), and (3) purported hearsay elicited during the trial.  Each of Fiumano's claims are meritless and entirely unsupported by the record.

The Supreme Court has recognized that defense counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  This duty, however, does not "compel defense counsel to investigate comprehensively every lead or every possible defense . . . or to scour the globe on the off-chance that something will turn up."  Greiner v. Wells, 417 F.3d 305, 320-21 (2d Cir. 2005) (internal quotation marks and citations omitted).  Accordingly, "[t]o successfully assert an ineffective assistance of counsel claim based on a failure to investigate, 'a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation.'"  United States v. Peterson, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012) (quoting Taylor v. Poole, No. 07 Civ. 6318 (RJH) (GWG), 2009 WL 2634724,

at *14 (S.D.N.Y. Aug. 27, 2009), report and recommendation adopted, No. 07 Civ. 6318 (RJH) (GWG), 2011 WL 3809887 (S.D.N.Y. Aug. 26, 2011)); see also United States v. Vargas, 871 F. Supp. 623, 624 (S.D.N.Y. 1994) (rejecting ineffective assistance claim based on failure to investigate where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored").  The burden is on the petitioner to provide a "comprehensive showing as to what the investigation would have produced."  Halo v. United States, No. 06 Civ. 5041 (ARR) (RLM), 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007).

Fiumano first argues that Steward was ineffective in his investigation of the Clear Blue fraud scheme because he purportedly failed to discover that Clear Blue was also known as "Apex" and that the FTC had initiated a civil action against Apex in 2014.  (ECF No. 196.)  As noted previously, Fiumano's "career" in mortgage fraud began at Clear Blue in 2009.  Before Fiumano's trial, the Government moved in limine to introduced evidence of the Clear Blue fraud scheme as direct evidence of the charged crimes or, in the alternative, pursuant to Federal Rule of Evidence Rule 404(b).  See United States v. Fiumano, No. 14 Cr. 518 (JFK), 2016 WL 1629356, at *3 (S.D.N.Y. Apr. 25, 2016).  Steward opposed the in limine motion in a written submission to the Court.  (ECF No. 29.)  In an April 25, 2016, Decision, the Court admitted the evidence under Rule 404(b).

Id. at *5.  In that Decision, the Court noted that "the prior mortgage modification scheme evidence is relevant to the issue of knowledge or intent . . . [and] has a tendency to make [it] more probable that Fiumano knew how to implement the scheme, intended to defraud his customers, and was free of any mistake that his conduct was legal."  Id.

Fiumano's arguments concerning Steward's investigation into this evidence and the FTC's subsequent civil actions against Apex are conclusory and, as a result, entirely meritless.  In his various filings, Fiumano broadly asserts that an inquiry into the FTC's civil action would have uncovered exculpatory evidence.  Fiumano, however, fails to identify what exculpatory evidence a more thorough investigation would have revealed.  His general description of Apex's relationship to Clear Blue and the FTC's action against the company "provides no reason for the court to believe that further investigation would have revealed additional information helpful to his case." Donato v. United States, No. 09 Civ. 5617 (NGG), 2012 WL 4328368, at *6 (E.D.N.Y. Sept. 20, 2012); see also Castellano v. United States, 795 F. Supp. 2d 272, 279 (S.D.N.Y. 2011) (rejecting ineffective assistance claim where petitioner failed to identify alternative evidence that, if offered, "would have undermined confidence in the jury verdict").  Moreover, the decision to refrain from investigating Clear Blue was a

reasonable one.  The Government introduced the Clear Blue
evidence to demonstrate the origins of the charged conspiracy,
the conspiratorial relationship between Abghari and Fiumano, and
Fiumano's motive, intent, and plan to operate the fraudulent
scheme.  The fact that Clear Blue operated under an alias and
was ultimately shuttered by the FTC only corroborates Abghari's
trial testimony that he, Fiumano, and others committed fraud
while working for Clear Blue.  Accordingly, Steward's "decision
to focus his investigative efforts on other pieces of the
defense was a reasonable strategic choice."  Parrilla v. United
States, No. 13 Cr. 360 (AJN), 2021 WL 4066021, at *19 (S.D.N.Y.
Sept. 7, 2021).

Fiumano next contends that Steward "was ineffective in
failing to investigate" certain federal regulations related to
"mortgage assistance relief service providers" ("MARS"), such as
12 C.F.R. § 1015.2.  (ECF No. 196.)  Specifically, Fiumano
argues that the definition of the word "material" contained in
12 C.F.R. § 1015.2 was relevant to his defense and that Steward
was ineffective in failing to "inform the Court" of the
regulatory definition.  (ECF No. 196.)  The Code of Federal
Regulations, however, had no bearing on Fiumano's criminal
trial.  As such, Fiumano's "failure-to-investigate" claim
concerning federal MARS regulations fails.  See United States v.
Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make

14

a meritless argument does not rise to the level of ineffective assistance"), cert. denied, 516 U.S. 927 (1995).

Finally, Fiumano broadly asserts that Steward's investigation of the Government's evidence was ineffective because he failed to discover that "the Government's entire case was hearsay[.]"  (ECF No. 196.)  This argument is entirely meritless.  As noted previously, the Government's case was based on in-court testimony and documentary evidence that was properly admitted under the Federal Rules of Evidence.  Accordingly, Steward's decision to not object to the introduction of the Government's evidence was neither unreasonable nor ineffective. See Torres v. Fisher, No. 06 Civ. 6579 (SLT) (VVP), 2010 WL 1338088, at *8 (S.D.N.Y. Mar. 31, 2010) ("A trial counsel is not deemed ineffective for failing to make a pointless objection to the admission of evidence which had already been deemed admissible by the court").

## 2. Failure to Object to Jury Instructions

Fiumano next argues that Steward "was ineffective for failing to object" to the Court's jury instruction on the conspiracy charge contained in Count One.  (ECF No. 196.) Specifically, Fiumano avers that although he was charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, the Court "charged the jury on a violation of 18 U.S.C. § 371 general conspiracy."  (Id.)  Fiumano argues that because §

15

371 carries a maximum sentence of five years in prison, his sixteen year "wire fraud sentence should be reduced to 5 years[.]"  (Id.)  Fiumano's claim is unavailing.

As the Government notes in its Memorandum of Law in Opposition, the Court's jury instructions on Count One were "drawn from Sand's Model Federal Jury Instructions and Second Circuit case law."  (ECF No. 199.)  Fiumano has failed to identify a single error in the Court's charge to the jury. Because the instructions were proper, Steward appropriately refrained from making an objection.  Fiumano's claim, therefore, is rejected.  See Johnson v. United States, No. 15 Civ. 3956 (RJS), 2018 WL 4625799, at *6 (S.D.N.Y. Sept. 26, 2018) ("[F]ailing to object to a legally correct jury charge does not constitute deficient performance" (internal citations omitted)).

### 3. Alleged Failure to File a Rule 29 Motion

Fiumano next contends that Steward was ineffective for "fail[ing] to adequately prepare and file a Rule 29 [motion for a judgment of acquittal]." (ECF No. 196.)  As Fiumano concedes in his petition, Steward made an oral motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the Government's case.  (Tr. at 714.)  The Court denied the motion, noting that "there is more than adequate evidence to be submitted to the jury."  (Id. at 716.)  Fiumano argues that Steward's oral motion was ineffective because he

16

failed to expressly challenge "the insufficiency in the scope of
the conspiracy" and the adequacy of the Clear Blue evidence.
(ECF No. 196.)  Fiumano's claim is meritless.

Given the weight of the Government's evidence presented at
trial, the Court finds that Steward's brief oral motion did not
fall below the "objective standard of reasonableness."
Strickland, 466 U.S. at 688.  As noted previously, the
Government's evidence of Fiumano's participation in the PMG
fraud scheme was overwhelming and included, among other things,
the testimony of three co-conspirators and dozens of
incriminating emails sent by Fiumano to his sales staff.  No
argument in support of a motion for a judgment of acquittal
could have overcome the Government's proof.  Accordingly,
Fiumano's ineffectiveness claim related to the substance of the
motion fails.  See Awulye v. United States, No. 13 Cr. 875-1
(RJS), 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020)
(concluding that counsel's failure to bring Rule 29 motion did
not amount to ineffective assistance of counsel where "even a
lawyer with the skill of Clarence Darrow or Johnny Cochrane
would have been unable to overcome the government's proof").

### 4. Fiumano Was Not Prevented from Testifying

Finally, Fiumano argues that Steward was ineffective
because he prevented him from taking the stand in his own
defense.  In support of this argument, Fiumano asserts that

17

Steward did not permit him to testify because doing so "would have substantially extended the trail and . . . the preparation required by [Steward] would have required much more investigation."  (ECF No. 196.)  Fiumano's claim is belied by the record, which establishes that he knowingly and voluntarily declined to testify in his own defense, as well as various statements contained in Steward's affidavit.

After Fiumano indicated that he did not wish to put on a defense, the Court called Fiumano and Steward to the bench and the following colloquy took place:

> THE COURT: My understanding, Mr. Steward, is you're going to rest. Is that correct?
> MR. STEWARD: Correct, your Honor.
> THE COURT: My understanding is that you are not going to put Mr. Fiumano on the witness stand. Is that correct?
> MR. STEWARD: Yes.
> THE COURT: Do you understand that you do have the right to testify?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you discussed that with Mr. Steward?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you discussed, after thought and consultation, that it is your decision not to testify?
> THE DEFENDANT: Yes.
> THE COURT: You understand that you do have the right to testify?
> THE DEFENDANT: Yes, I understand. (Tr. at 713.)

Fiumano offers no evidence in support of his claim that Steward "prevented" him from testifying.  Additionally, Fiumano does not argue that he was coerced, deceived, or misled by Steward before he declined to take the stand.  In his affidavit, Steward explicitly states that he "advised Mr. Fiumano that his

testimony would be devastating to his case" and expressed his

"opinion that not only would such testimony be of little value,

but the cross-examination would also be very damaging."  (ECF

No. 225.)  According to Steward, Fiumano "accepted [his] advice

at th[e] time."  (Id.)  The Court, finding no reason to

disbelieve Steward's sworn statement, concludes that Fiumano was

not deprived of an opportunity to testify in his own defense.

### 5. No Evidentiary Hearing is Required

As noted previously, § 2255 requires the district court to

hold a hearing "[u]nless the motion and the files and records of

the case conclusively show that the prisoner is entitled to no

relief."  28 U.S.C. § 2255(b); See Gonzalez v. United States,

722 F.3d 118, 130 (2d Cir. 2013).  The Court is also mindful

that "[a] defendant seeking a hearing on an ineffective

assistance of counsel claim need establish only that he has a

'plausible' claim of ineffective assistance of counsel, not that

he will necessarily succeed on the claim."  Raysor, 647 F.3d at

494 (internal citation and quotation marks omitted).

Nevertheless, Second Circuit case law permits the district court

to choose "a 'middle road' of deciding disputed facts on the

basis of written submissions."  Id. (quoting Pham v. United

States, 317 F.3d 178, 184 (2d Cir. 2003)).  "For example, 'when

the record [is] supplemented by a detailed affidavit from trial

counsel credibly describing the circumstances concerning [a

19

petitioner's] failure to testify,' there may be a sufficient record to support a dismissal of a habeas petition without the need for a hearing." Colotti v. United States, No. 04 Cr. 1110-01 (DLC), 2011 WL 6778475, at *7 (S.D.N.Y. Dec. 21, 2011) (quoting Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001)).

Here, Fiumano's various ineffective assistance claims, including his claim that Steward "prevented" him from testifying in his own defense, are contradicted by the trial record and Steward's sworn testimony.  Accordingly, the Court finds that no hearing is warranted or required.  See Wang v. United States, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (concluding it was reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other affidavits and transcript of plea hearing); see also Rawlins v. United States, No. 15 Cr. 00377 (AJN), 2021 WL 4555962, at *2 (S.D.N.Y. Oct. 5, 2021) (declining to hold a hearing where trial record and affidavit from trial counsel "conclusively demonstrate that Petitioner is not entitled to any relief").

### B. "Scheme to Defraud" is Not Unconstitutionally Vague

In addition to his various claims regarding the effectiveness of Steward, Fiumano argues that the Court must vacate his convictions because the phrase "scheme to defraud" in

20

the wire fraud statute, 18 U.S.C. §§ 1342, 1343, is
unconstitutionally vague as applied to his conduct.
Specifically, Fiumano argues that the statutory language "does
not put the defendant on notice as to the elements of the crime"
and "an ordinary person would not know what is prohibited."
(ECF No. 196.)  The Court disagrees.

As an initial matter, Fiumano is procedurally barred from
raising this claim because he did not raise it on direct appeal.
"Where a defendant could have brought a claim raised in a
federal habeas petition on direct appeal, but failed to do so,
the claim is barred as procedurally defaulted."  United States
v. Romain, No. 13 Cr. 0724 (GWG), 2019 WL 4493463, at *2
(S.D.N.Y. Sept. 19, 2019), report and recommendation adopted,
No. 18 Civ. 1195 (RA), 2019 WL 6830431 (S.D.N.Y. Dec. 13, 2019).
A procedurally defaulted claim can only be raised in a
subsequent § 2255 proceeding "if the defendant can first
demonstrate either 'cause' [for the default] and actual
'prejudice,' . . . or that he is 'actually innocent.'"  Bousley
v. United States, 523 U.S. 614, 622 (1998) (citations omitted)
(quoting Murray v. Carrier, 477 U.S. 478, 485 (1986)).  Here,
Fiumano offers no explanation for his procedural default and his
claim does not involve an assertion of actual innocence.
Accordingly, Fiumano's vagueness challenge is procedurally
barred from collateral review and is, therefore, rejected.  See

21

United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011).

Additionally, Fiumano's claim is entirely meritless.  A criminal statute is unconstitutionally vague as applied to a defendant's conduct if it (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  See Holder v. Humanitarian Law Project, 561 U.S. 1, 19 (2010).  As relevant here, "judicial decisions can provide a defendant with notice" of the kind of conduct a statute proscribes.  United States v. Smith, 985 F. Supp. 2d 547, 589 (S.D.N.Y. 2014), aff'd sub nom. United States v. Halloran, 664 F. App'x 23 (2d Cir. 2016).  Although "[t]he mail and wire fraud statutes do not define the term 'scheme to defraud' . . . it has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'"  United States v. Marino, 204 F. Supp. 2d 476, 490 (E.D.N.Y. 2002) (quoting McNally v. United States, 483 U.S. 350, 358 (1987)).  The Second Circuit has stated that the phrase connotes "a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community."  United States v. Ragosta, 970 F.2d 1085, 1090 (2d Cir. 1992).

Although the Court does not expect Fiumano to be familiar with this Circuit's wire fraud jurisprudence, there can be

little doubt that he had fair notice that his multi-year mortgage modification fraud scheme was proscribed by federal law.  "Only an 'unexpected and indefensible' interpretation of a statute that gives a defendant 'no reason to even suspect that his [or her] conduct might be within its scope' will violate the notice element." Copeland v. Vance, 230 F. Supp. 3d 232, 249 (S.D.N.Y. 2017), aff'd, 893 F.3d 101 (2d Cir. 2018) (quoting Smith, 985 F. Supp. 2d at 588).  Here, Fiumano and his co-conspirators defrauded thousands of financially vulnerable homeowners in the wake of one of the worst financial crises in American history.  This conduct undeniably amounted to a "departure" from community standards of "fair play and candid dealings." Ragosta, 970 F.2d at 1090.  As a result, Fiumano's constitutional vagueness challenge is both procedurally barred and devoid of any merit.

## IV. Conclusion

For the foregoing reasons, Fiumano's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 196) is DENIED.  The Court declines to issue a certificate of appealability, as Fiumano has not made a substantial showing of a denial of a constitutional right.  See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and

permission to proceed in forma pauperis is DENIED.

The Clerk of Court is respectfully directed to terminate the motion at No. 14 Cr. 518, Dkt. 196, and to close the case at No. 19 Civ. 11906.  The Court will mail a copy of this Opinion and Order to Fiumano.

**SO ORDERED.**

Dated:    New York, New York
          February  ), 2022

                                          John F. Keenan
                                   United States District Judge